Keating, J.
In 1965, Cyril H. Millington, the husband of the plaintiff, Pauline Millington, was 37 years old. He became completely paralyzed from his waist down as a result of an elevator accident. His wife has brought this action for loss of consortium basing her claim on the fact that her husband will spend the rest of his life as an invalid. She further alleges that this has caused a radical change in their marriage and that this circumstance was due to the defendants’ negligence, breach of warranty and statutory violations.
Defendants moved to dismiss the complaint on the ground of legal insufficiency. The motions were granted on the authority of Kronenbitter v. Washburn Wire Co. (4 N Y 2d 524). The Appellate Division unanimously affirmed without opinion. We granted leave to reconsider our position in Kronenbitter.
*501 The passage of statutes which have resulted in the legal emancipation of married women (General Obligations Law, § 3-301, subd. 1; § 3-301, subd. 2; § 3-313; Domestic Relations Law, §§ 50, 61, 231; Real Property Law, §§ 11, 302), as well as those enactments which have imposed equal obligations and responsibilities upon women including the requirement of supporting a husband (Domestic Relations Law, § 32; Social Services Law, § 101) have revolutionized the legal, status of married women. Recently, discrimination on the basis of sex was proscribed (U. S. Code, tit. 42; § 2000e et seq.) These legal changes are, of course, a reflection of the movement of society generally toward equality between the sexes, and it continues without surcease.
As long ago as 1889, this court wrote: “ [The husband’s] right to the conjugal society of his wife is no greater than her right to the conjugal society of her husband ” (Bennett v. Bennett, 116 N. Y. 584, 590). Although in Kronenbitter we acknowledged this development in the law, nevertheless we refused to recognize the wife’s right to maintain an action for loss of consortium on two grounds. First, there is an alleged danger of duplication of damage. Second, it is claimed that the cause of action is based on outworn theory. Quoting Professor Jaffe, the opinion described the action as “ a fossil from an earlier era ” (Damages for Personal Injury: The Impact of Insurance, 18 Law & Contemp. Prob. 219, 229).
Consortium, it is insisted, includes the loss of support and,' since that damage is already recovered by the husband in the form of recovery for lost earnings, there may be a double recovery. Separating the common elements of the two items of damage would thus unduly confuse a jury. Aside from the fact that the jurisdictions which permit recovery by the wife have indicated no difficulty with the double recovery aspect, a proper charge by the trial court would obviate the entire problem since it would not have to mention the element of support. “ Simple mathematics will suffice to set the proper quantum. For inasmuch as it is our opinion that the husband in most cases does recover for any impairment of his duty to support his wife, and, since a compensable element of damages must be subject to measure, it is a simple matter to determine the damages to *502 the wife’s consortium in exactly the same way as those of the husband are measured in a similar action and subtract therefrom the value of any impairment of his duty of support.” (Hitaffer v. Argonne Co., 183 F. 2d 811, 819, cert. den. 340 U. S. 852.)
Only this past year, the Supreme Court of Wisconsin in Moran v. Quality Aluminum Casting Co. (34 Wis. 2d 542) quoting the Illinois Supreme Court in Dini v. Naiditch (20 Ill. 2d 406, 427) rejected the double recovery argument (34 Wis. 2d 558): “‘Any conceivable double recovery * * * can be obviated by deducting from the computation of damages in the consortium action any compensation given her husband in his action for the impairment of his ability to support * * * [S]ince the possibility of double recovery can be eliminated by this simple adjustment of damages, it should not constitute a basis for denying [the wife’s] action, which includes many elements which are in no way compensable in the husband’s action,.’ (Emphasis added.) ” Even the critics of the extension of the rule have conceded that the problem is minimized by a joint trial of both the husband’s and wife’s causes of action.
Since in New York, it is rare, if not unknown, to try a husband’s consortium action separately from his wife’s negligence action, the fear of duplicative damages is wholly unsupportable. Furthermore, if any plaintiff should attempt to exploit the possibility of double recovery by bringing separate actions, motions to consolidate would quickly resolve that difficulty.
Turning then to the contention that the action is a dated one — “ an anachronistic remnant of the wife’s common law inability to sue and recover damages for her own injuries” (Igneri v. Cie de Transports Oceaniques, 323 F. 2d 257, 264), it has been argued that the way to eliminate the inequality is to remove the husband’s cause of action. “ It derives from the time when the wife was regarded in law in some respects as her husband’s chattel. He was allowed damages for injury to her in much the same manner that he would have been allowed damages for the loss or injury of one of his domestic animals ” (Kronenbitter v. Washburn Wire Co., supra, p. 527).
The concept of consortium includes not only loss of support or services, it also embraces such elements as love, companionship, affection, society, sexual relations, solace and more. (Mont *503 gomery v. Stephan, 359 Mich. 33, 36; Moran v. Quality Aluminum Casting Co., supra, 34 Wis. 2d, p. 557.) Consequently the interest sought to be protected is personal to the wife. It is thb interest which may have turned a happily married woman into a life-long nurse and deprived her of the opportunity of rearing children. Disparagingly described as “ sentimental ” or “ parasitic ” damages, the mental and emotional anguish caused by seeing a healthy, loving companionable mate turned into a shell of a person is real enough. To describe the loss as “ indirect ” is only to evade the issue. The loss of companionship, emotional support, love, felicity and sexual relations are real injuries. The trauma of having to care for a permanent invalid is known to have caused mental illness. There may not be a deterioration in the marital relationship, but it will certainly alter it in a tragic way. Even in the case of a husband the “ sentimental ” damages may predominate over the loss of support or material element. Thus to describe these damages as merely parasitic is inaccurate and cruel. The Supreme Court of Michigan effectively answered the “ fossil ” argument when it wrote in Montgomery v. Stephan (359 Mich. 33, 46, 48-49, supra):
“We come, then, as we must ultimately in every case, unless we are to continue to utilize fictions, or unless we are to dispose of the ease on a narrow point of procedure or pleading, to a balancing of interests. On the one hand we have a wife deprived of the affection of her husband, his companionship, his society, possibly deprived even of her opportunity to bear sons and daughters. On the other, we have a defendant, whose liability because of his act must involve the violation of a duty of care with respect to it, and, furthermore, whose liabilities as a result of his negligent act must have some reasonable limitation. So analyzed, we see the problem not as a unique and peculiar historical anomaly but as a part of a much larger pattern, as a part of a clearly discernible movement in the law. * * *
“ The gist of the matter is that in today’s society the wife’s position is analogous to that of a partner, neither kitchen slattern nor upstairs maid. Her duties and responsibilities in respect of the family unit complement those of the husband, extending only to another sphere. In the good times she lights the hearth with her own inimitable glow. But when tragedy *504 strikes it is a part of her unique glory that, forsaking the shelter, the comfort, the warmth of the home, she puts her arm and shoulder to the plow. We are now at the heart of the issue. In such circumstances, when her husband’s love is denied her, his strength sapped, and his protection destroyed, in short, when she has been forced by the defendant to exchange a heart for a husk, we are urged to rule that she has suffered no loss compensable at the law. But let some scoundrel dent a dishpan in the family kitchen and the law, in all its majesty, will convene the court, will march with measured tread to the halls of justice, and will there suffer a jury of her peers to assess the damages. Why are we asked, then, in the case before us, to look the other way? Is this what is meant when it is said that justice is blind? ”
In Deems v. Western Md. Ry. Co. the Maryland Court of Appeals stated (247 Md. 95, 108-109):
“ [T]here is, in a continuing marital relationship, an inseparable mutuality of ties and obligations, of pleasures, affection and companionship, which makes that relationship a factual entity * * * We see no valid reason why that concept should not be extended to permit recovery for wrongs negligently caused to the legal unity through the physical injury of either spouse.
* * *
“ That both spouses suffer when the marriage relationship is adversely affected by physical injury to either is a fact evidenced, if not by logic, by human experience/since the institution of marriage became a basic part of our mores * * * Today, at least, it is unquestioned that the desire to have children and the pleasures of sexual intercourse are mutually shared. If the husband’s potency is lost or impaired, it is both the man and woman who are affected. If the physical injury is to the wife, she sustains the same kind of loss in the marital relation as he does in the converse situation.”
Thus the “ consortium ” interest to be protected here does not rest on any medieval theory but on the real injury done to the marital relationship. The “ wife’s interest in the undisturbed relation with her consort is no less worthy of protection than that of the husband ” (Prosser, op. cit., p. 917). Once it is recognized that consortium now represents the interest of the *505 injured party’s spouse in the continuance of a healthy and happy marital life and that the cause of action seeks to compensate for the injury to that relationship, it becomes evident that the cause of action is not a relic. For this reason we have resolved to overrule Kronenbitter and to remove the discrimination in the existing law by acknowledging the equal right of the wife to damages as a result of her loss of consortium.
In Hitaffer v. Argonne Co. (183 F. 2d 811, cert. den. 340 U. S. 852), decided in 1950, recognizing the irrationality of denying the wife a remedy available to her husband, the District of Columbia Circuit updated the common law of the district by acknowledging a cause of action in the wife for the loss of consortium.
At first, the Hitaffer decision was generally rejected (Prosser, Torts [3d ed.], p. 918). At the time of our decision in Kronenbitter in 1958, only three States, Arkansas, Georgia and Iowa, had followed the Hitaffer case.[1]
In the 10 years following that decision, however, there has been a radical change of opinion.
Since Kronenbitter, the highest courts of 10 States, including Delaware, Idaho, Illinois, Maryland, Michigan, Missouri, New Jersey, Ehode Island, South Dakota, and, most recently, Wisconsin (12 years after its initial rejection of Hitaffer), have accepted the rationale of the Hitaffer decision and have overruled, if necessary, the common-law rule of their States.[2] In addition to Arkansas, which changed over in 1957, but was not mentioned in the Kronenbitter opinion, there are *506 Federal decisions interpreting Montana and Nebraska law as allowing the wife a consortium action.[3]
On the other hand, 13 States since 1958 have refused to recognize the wife’s cause of action.[4] Significantly, however, a majority have based their decision solely on the view that the matters should be left to their respective Legislatures. In addition, there has been a decision refusing to extend Hitaffer into maritime law, but the opinion rested on the view that to apply Hitaffer to maritime law would yield some anomalous results, not present in the usual common-law situation (Igneri v. Cie de Transports Oceaniques, 323 F. 2d 257, cert. den. 376 U. S. 949).
There is, nevertheless, ample support for Dean Prosser’s statement made in 1963 that “ Around 1958 something of a current of support for the Hitaffer case set in, and since that date the trend has been definitely in the direction of approval ” (Prosser, Torts [3d ed.], p. 918).
Kronenbitter has found no substantial support because its premises are in error. This has been the conclusion of almost every legal commentator[5] as well as 12 jurisdictions which have *507 refused to follow New York. Whatever may have been the historical origins of the action, new policies now sustain the husband’s cause of action and equally support its extension to the wife.
It must also be noted that Kronenbitter is not in accord with the growing recognition that the law of torts must recognize the interest of persons in the protection of essentially emotional interests, and that this tendency has found expression in New York law. Thus in Battalla v. State of New York (10 N Y 2d 237) we held that there could be recovery for injuries, physical or mental, incurred by fright negligently induced. (See, also, Ferrara v. Galluchio, 5 N Y 2d 16; Halio v. Lurie, 15 A D 2d 62, 66.) In wrongful death actions we have recognized the infant’s loss of parental care and guidance resulting from the death of a parent as a compensable element. (Neff v. United States, 282 F. Supp. 910, 923-925; Tilley v. Hudson Riv. R. R. Co., 24 N. Y. 471 [1862]; Rogow v. United States, 173 F. Supp. 547, 562 [S. D. N. Y., Kaufman, J.]; Moore-McCormack Lines v. Richardson, 295 F. 2d 583, 588.) The policy of modern tort law has been to expand tort liability ‘ ‘ in the just effort to afford decent compensatory measure to those injured by the wrongful conduct of others ” (Ekalo v. Constructive Serv. Corp. of America, 46 N. J. 82, 93, supra).
It is also contended that the “ sentimental ” damages such as the diminution of the value of her husband’s society and affection and the deprivation of sexual relations and the attendant loss of child-bearing opportunity are too personal, intangible, and conjectural to be measured in pecuniary terms by a jury. This argument has no merit. The logic of it would also hold a jury incompetent to award damages for pain and suffering.
Money is a poor substitute for the loss of an only child or the pain resulting from serious injuries. Likewise, it cannot truly compensate a wife for the destruction of her marriage, but it is the only known means to compensate for the loss suffered and to symbolize society’s recognition that a culpable wrong—even if unintentional—has been done.
The defendants argue that there are practical difficulties in allowing a consortium action, especially with respect to retrospective application. The problem has not troubled other courts seriously and may easily be resolved. Where there is a cause of *508 action brought by the injured husband pending, the wife’s consortium action, if not time-barred, should be joined with her husband’s claim. Where, however, the husband’s cause of action has been terminated either by judgment, settlement or otherwise, that should operate to bar the wife’s cause of action for consortium. This is a practical and fair solution of the problem and one which has recommended itself to other States. (Ekalo v. Constructive Serv. Corp. of America, 46 N. J. 82, supra [1965]; Deems v. Western Md. Ry. Co., 247 Md. 95, supra [1967].)
Plaintiff also argues that the present rule violates the equal protection of the Fourteenth Amendment. Recently, the Supreme Court in Levy v. Louisiana (391 U. S. 68) unanimously held that, if a State permits actions to recover for wrongful death and conscious pain and suffering, it could not deny illegitimate children this remedy. Such reasoning would seem applicable here since it is concluded that there is no basis for the existing discrimination. Nevertheless, we do not pass upon the constitutional question for we have concluded on the basis of policy and fairness to update New York law and overrule Kronenbitter.
Finally, we turn to the argument that change should come from the Legislature. No recitation of authority is needed to indicate that this court has not been backward in overturning unsound precedent in the area of tort law.
In Woods v. Lancet (303 N. Y. 349) we gave expression to the view that this court will continually seek to keep the common law of this State abreast of the needs and requirements of our age (p. 355): “We act in the finest common-law tradition when we adapt and alter decisional law to produce common-sense justice. * * * Legislative action there could, of course, be, bilt we abdicate our own function, in a field peculiarly nonstatutory, when we refuse to reconsider an old and unsatisfactory court-made rule.” (See, also, Battalla v. State of New York, 10 N Y 2d 237, supra; Bing v. Thunig, 2 N Y 2d 656, discussed in “ A Study of Judicial Methodology ”, 61 Col. L. Rev. 827, 877, where we imposed malpractice liability on previously immune hospitals.)
In Gallagher v. St. Raymond’s R. C. Church (21 N Y 2d 554) we rejected a venerable rule which “ no longer expresses a *509 standard of care which accords with the mores of our society ” (id., p. 558). We went 'on to note that “ the common law of this State is not an anachronism, but is a living law which responds to the surging reality of changed conditions.” Abiding by that principle, we have concluded to reject Kronenbitter and to recognize a cause of action for consortium in the wife, thereby terminating an unjust discrimination under New York law.
The order of the Appellate Division should be reversed and the defendants’ motions to dismiss should be denied, with costs.
Judges Burke, Breitel and Jasen concur; Chief Judge Fuud and Judges Scileppi and Bergan dissent and vote to affirm on the authority of and for the reasons given in Kronenbitter v. Washburn Wire Co. (4 N Y 2d 524).
Order reversed, with costs, and matter remitted to Special Term for further proceedings in accordance with the opinion herein.

. Missouri Pac. Transp. Co. v. Miller, 227 Ark. 351 (1957); Brown v. Georgia-Tennessee Coaches, 88 Ga. App. 519 (1st Div., 1953); Bailey v. Wilson, 100 Ga. App. 405 (2d Div., 1959); Acuff v. Schmit, 248 Iowa 272 (1957).

. Stenta v. Leblang, 55 Del. 181 (1962); Nichols v. Sonneman, 91 Idaho 199 (1966); Dini v. Naiditch, 20 Ill. 2d 406 (Ill., 1960); Deems v. Western Md. Ry. Co., 247 Md. 95 (1967); Montgomery v. Stephan, 359 Mich. 33 (1960); Novak v. Kansas City Tr., 365 S. W. 2d 539 (Mo., 1963); Ekalo v. Constructive Serv. Corp. of America, 46 N. J. 82 (1965); Mariani v. Nanni, 95 R. I. 153 (1962); Hoekstra v. Helgeland, 78 S. D. 82 (1959); Moran v. Quality Aluminum Casting Co., 34 Wis. 2d 542 (1967). See, also, Clem v. Brown, 3 Ohio Misc. 165 (1965), and Ross v. Cuthbert, 239 Ore. 429 (1964).

. Duffy v. Lipsman-Fulkerson & Co., 200 F. Supp. 71 (D. Mont., 1961); Dutton v. Hightower & Lubrecht Constr. Co., 214 F. Supp. 298 (O. Mont., 1963); Cooney v. Moomaw, 109 F. Supp. 448 (D. Neb., 1953), and Luther v. Maple, 250 F. 2d 916, 922 (8 Cir., 1958) (Nebraska law).

. Smith v. United Constr. Workers, 271 Ala. 42 (1960); Deshotel v. Atchison, T. & S. F. Ry. Co., 50 Cal. 2d 664 (1958); Hoffman v. Dautel, 192 Kan. 406 (1964); Baird v. Cincinnati, New Orleans & Texas Pacific R. Co., 368 S. W. 2d 172 (Ky., 1963); Potter v. Schafter, 161 Me. 340 (1965); Snodgrass v. Cherry-Burrell Corp., 103 N. H. 56 (1960); Roseberry v. Starkovich, 73 N. M. 211 (1963); Neuberg v. Bobowicz, 401 Pa. 146 (1960); Page v. Winter, 240 S. C. 516 (1962); Krohn v. Richardson-Merrell, 219 Tenn. 37 (1966); Seagraves v. Legg, 147 W. Va. 331 (1962); Baldwin v. State, 125 Vt. 317 (1965); Rush v. Great Amer. Ins. Co., 213 Tenn. 506 (1964).

. Prosser, Torts (3d ed.), pp. 916-919; 1 Harper & James, Torts (1956), p. 643; Holbrook, The Change in the Meaning of Consortium, 22 Mich. L. Rev. 1, 8-9 (1923); Lippman, The Breakdown of Consortium, 30 Col. L. Rev. 651, 664-668 (1930); Kinnaird, Right of Wife to Sue for Loss of Consortium Due to Negligent Injury to Her Husband, 35 Ky. L. J. 220, 223 (1947); Note, Judicial Treatment of Negligent Invasion of Consortium, 61 Col. L. Rev. 1341, 1352-1357 (1961); 55 Mich. L. Rev. 721 (1957); 1 U. C. L. A. L. Rev. 223 (1954); 41 Geo. L. J. 443 (1953); 25 Tul. L. Rev. 293 (1951); 9 Ind. L. J. 182 (1933); 5 Cornell L. Q. 171 (1920). See, also, Green, Relational Interests, 29 Ill. L. Rev. 460, 466-467 (1934).