OPINION OF THE COURT
Harry T. Nusbaum, J.
The plaintiff executrix has moved for an order permitting her to amend her complaint in this wrongful death case, to add a cause of action for loss of consortium. The questions presented are whether the law allows or should allow recovery for "loss of services and society” in a wrongful death action, and if such claim is allowable, whether this particular plaintiff should, in the court’s discretion, be permitted to amend her complaint more than three years after issue has been joined.
The alleged facts and procedural history of this case are briefly as follow. On November 24, 1972 the decedent was admitted into the defendant Columbia Presbyterian Medical Center, and on December 4 he underwent open heart surgery. Forty-eight hours after the surgery, he was removed from the hospital’s intensive care unit and placed in a small private room. There, it is alleged, the defendants failed to provide him with proper medical care, leaving him completely alone for a period of some 10 hours during which he experienced apprehension and fright affecting his heart function. It is alleged that as a result thereof he died on December 9, 1972.
Summonses were served on all defendants on or about April 21, 1974, and complaints were served on November 22, 1974. Answers were interposed on December 4 of that year. The case was heard before a medical malpractice panel on May 11, 1977 which returned a unanimous finding of liability against the defendant hospital. Recently new counsel was retained by plaintiff. Upon examination of the complaint he found it to be *541 lacking any claim for loss of consortium and therefore brought this motion.
At common law, causes of action for wrongful death did not exist (see, generally, Western Union Tel. Co. v Cochran, 277 App Div 625, affd 302 NY 545, mot for rearg den 303 NY 665). In time, the law came to realize the irony of permitting recovery in tort for serious personal injuries while not allowing dependents of the decedent recovery for the victim’s death. Today, under this State’s Constitution (art I, § 16) and by statute (EPTL 5-4.1), the right of maintaining an action for wrongful death is firmly established in New York. However, the exact nature of the elements of a proper damage award appears to be in an evolutionary stage of development. Although in relevant part, EPTL 5-4.3 provides that damages are to be compensation for "pecuniary injuries” suffered as a result of the decedent’s death, the meaning of the term "pecuniary injuries” seems unsettled to this court. Therefore, authorities both within and without this State have been consulted for guidance.
In discussing "The Death on the High Seas Act” (US Code, tit 46, §§ 761-768), a statute allowing recovery for wrongful death of seamen, the United States Supreme Court in Sea-Land Servs. v Gaudet (414 US 573) broke a chain of Federal cases which had interpreted pecuniary loss in a narrow sense precluding recovery for loss of consortium. The court held that a monetary award to a surviving spouse for the loss of her deceased husband’s society was a proper element of relief to the widow. In so declaring, the court noted that a clear majority of States permitted recovery for such an element in their wrongful death statutes. This ruling expanded the meaning of pecuniary loss although, the court did take care to distinguish loss of society from mental anguish and grief over the death of the decedent. The former entails the loss of a positive benefit, the continuing care, guidance and companionship which the decedent would have provided the survivors had he lived. The latter represents an emotional response and the court did not allow compensation for it at that time.
In New York, the Court of Appeals has also allowed a deviation from a strict interpretation of the term "pecuniary injuries”. In an 1862 case, Tilley v Hudson Riv. R. R. Co. (24 NY 471) the court enunciated what was to become a standard rule in this State, namely, that children may recover for the loss of parental services in wrongful death actions. Discours *542 ing on the term "pecuniary loss” which appeared in the wrongful death statute at that time, the court noted that the phrase was used to distinguish (p 476) "those injuries to the affections and sentiments which arise from the death of relatives”. It stated that children sustain a positive loss from the death of their parents but especially that of their mother who nurtures their intellectual, moral and physical training. In a second opinion (29 NY 252) rendered upon an appeal from the retrial of the case as mandated by its first decision, the Court of Appeals stated its position more forcefully. "I do not understand from the phraseology of the statute, that an extremely nice and contracted interpretation should be put upon the term 'pecuniary injuries.’ A liberal scope was designedly left for the action of the jury * * *. They must be satisfied that pecuniary injuries resulted; if so satisfied, they are at liberty to allow them, from whatever source they actually proceeded, which could produce them. If they are satisfied, from the history of the family, or the intrinsic probabilities of the case, that they were sustained by the loss of bodily care, or intellectual culture, or moral training, which the mother had before supplied, they are at liberty to allow for it.” (29 NY, at pp 286-287.)
To recognize that children suffer from the loss of society of their parents and allow recovery to them in wrongful death actions, but to reject this concept as between married persons draws a distinction without a difference. In Millington v Southeastern Elevator Co. (22 NY2d 498) the Court of Appeals realized that the marital relationship may be destroyed when either spouse is injured. It is my belief the same reasoning must and should apply if death results from the defendant’s negligence. The Millington court adopted the language of the Court of Appeals of Maryland in Deems v Western Md. Ry. Co. (247 Md 95, 108) to the effect that (p 504): "[Tjhere is, in a continuing marital relationship, an inseparable mutuality of ties and obligations, of pleasures, affection and companionship, which makes that relationship a factual entity.” Also quoted by the Millington court (pp 503-504) was the Supreme Court of Michigan’s opinion in Montgomery v Stephan (359 Mich 33, 48-49), which language is applicable here: "The gist of the matter is that in today’s society the wife’s position is analogous to that of a partner, neither kitchen slattern nor upstairs maid. Her duties and responsibilities in respect of the family unit complement those of the husband, extending only to *543 another sphere. In the good times she lights the hearth with her own inimitable glow. But when tragedy strikes it is a part of her unique glory that, forsaking the shelter, the comfort, the warmth of the home, she puts her arm and shoulder to the plow. We are now at the heart of the issue. In such circumstances, when her husband’s love is denied her, his strength sapped, and his protection destroyed, in short, when she has been forced by the defendant to exchange a heart for a husk, we are urged to rule that she has suffered no loss compensable at the law. But let some scoundrel dent a dishpan in the family kitchen and the law, in all its majesty, will convene the court, will march with measured tread to the halls of justice, and will there suffer a jury of her peers to assess the damages. Why are we asked, then, in the case before us, to look the other way? Is this what is meant when it is said that justice is blind?”
It is obvious to me, at least, that simple justice mandates the ending of our present archaic strictures on recoveries in wrongful death actions. This holding brings the law in New York into line with the clear majority of jurisdictions. (1 Speiser, Recovery for Wrongful Death [2d ed], § 3:49.) Indeed, this result is the natural progression from the Court of Appeals decisions in Tilley and Millington. Moreover, the same practical result reached by allowing amendment in this case has been realized by the Second Department in Martins v Ford (53 AD2d 887). There, it was held that a widow suing individually and as administratrix of the estate of her deceased husband could have a valid claim for loss of consortium in a wrongful death action.
There remains for discussion the argument that recovery for loss of society and services is limited to specific loss of the wife during the life of her husband; namely, that the right is derivative. Such an approach is analytically unsound. Inasmuch as the wife (or spouse) will experience permanent deprivation of her husband’s (or the other spouse’s) services and society following his or her wrongful death, it is more logical to have the period of loss of consortium measured by what would have been their joint lives. This approach is consistent with the theory of a wife’s recovery in a wrongful death action; its purpose is to make her whole in a legal sense by resorting to her a monetary value for what she has lost. Since she has lost her husband’s services and society through his premature death, she should be restored with their value for *544 the period of what would have been their joint lives had not negligently inflicted injury resulted in his early death. I am of the opinion that defendant’s argument was rejected by the Court of Appeals in Millington where it was said that the interest sought to be protected is personal to the wife. (Millington v Southeastern Elevator Co., 22 NY2d 498, 503, supra; see, also, Hitaffer v Argonne Co., 183 F2d 811, cert den 340 US 852.)
Finally, it has been argued that amendment of the complaint three years after issue has been joined is untimely and will prejudice the defendants. It is true that the plaintiff may no longer amend her complaint as of right but under CPLR 3025 (subd [b]) amendment should be freely allowed in the exercise of this court’s discretion. I find that the defendants in this action were notified of the facts and nature of this case by the original pleading and should not be prejudiced by the addition of this claim.