OPINION OF THE COURT
Stanley L. Sklar, J.
American Export Isbrandtsen Lines’ motion to dismiss the complaint of the spouse of an injured seaman for failure to state a cause of action is denied. The United States Supreme Court’s recognition of the existence of a loss of consortium claim of the spouse of a seaman injured in State territorial waters applies retroactively.
the facts
On February 1, 1970, John Gibson, the seaman-husband of plaintiff Anna Gibson, allegedly suffered a heart attack while *34 working as a "relief and/or night” engineer aboard the vessel Seawitch while it was docked at pier 13 in Staten Island. Defendant American Export allegedly was John Gibson’s employer and was the owner of the Seawitch. In November 1973, John Gibson started an action against American Export, asserting two causes of action for personal injury, one based on unseaworthiness and the other based on negligence.
In February 1977, Anna Gibson commenced the instant action alleging that American Export’s failure to provide her husband with a seaworthy vessel caused her the loss of his "love, affection, companionship, services, and consortium.”
Defendant urges that, at the time Anna Gibson commenced this action, the spouse of a seaman injured in State territorial waters did not have a claim for loss of consortium under general maritime law, and that the Supreme Court's decision in American Export Lines v Alvez (446 US 274), which granted such a right, should not be applied retroactively.
DEVELOPMENT OF A CLAIM FOR LOSS OF CONSORTIUM
In a personal injury claim arising from a maritime tort, "general maritime law governs the rights and liabilities of the parties. (Romero v International Term. Operating Co., 358 US 354 * * *)” (Alvez v American Export Lines, 46 NY2d 634, 638, affd 446 US 274). The Constitution and Congress have deemed admiralty and maritime matters to "require a uniform body of national law. (See, generally, Hart, Relations Between State and Federal Law, 54 Col L Rev 489.)” (Alvez v American Export Lines, supra, at 638-639.) Thus, if there is a uniform Federal rule on an issue, it governs. (Alvez v American Export Lines, supra, at 639.) With this in mind, this court proceeds to consider the substantive principles involved.
In 1963, the wife of a longshoreman injured while working aboard a vessel in State territorial waters had no cause of action for loss of society under the general maritime law (Igneri v Cie. de Transps. Oceaniques, 323 F2d 257 [2d Cir 1963], cert denied 376 US 949). It is important to note that at the time Igneri was decided, only 12 jurisdictions permitted a wife to recover damages for loss of consortium of her husband.
A significant change in maritime law occurred in 1970, the year John Gibson was injured. The long-held doctrine of The Harrisburg (119 US 199) was explicitly overruled and a cause of action for wrongful death under the general maritime law was recognized (Moragne v States Mar. Lines, 398 US 375).
*35 In 1974 it was held that the general maritime law wrongful death remedy, created by Moragne (supra), included the recovery of damages for "loss of support, services, and society, as well as funeral expenses” (Sea-Land Servs. v Gaudet, 414 US 573, 584). The court defined "loss of society” as "love, affection, care, attention, companionship, comfort, and protection”, but excluded mental anguish and grief. (Sea-Land Servs. v Gaudet, supra, at 585.)
In January 1977, approximately one month before Anna Gibson’s action was commenced, the District Court for the Southern District of New York held that the wife of a longshoreman injured in State territorial waters was entitled to recover damages for loss of consortium under the general maritime law (Giglio v Farrell Lines, 424 F Supp 927, lv denied Feb. 17, 1977 [2d Cir, docket No. 77-8014]). In Giglio, the court acknowledged that: "Since Igneri there has been substantial change in the common law view of a wife’s recovery for loss of consortium * * * [T]oday, 36 states recognize a wife’s right to be compensated * * * [T]he United States Supreme Court [in Sea-Land Servs. v Gaudet (supra)] may be regarded as having implicitly approved compensating the wife of a seaman for loss of consortium in maritime wrongful death actions by holding that a wife may recover for loss of society * * * [and that this should include personal injury actions in view of] the broad language of the [Gaudet] opinion [which] reflects the view that admiralty proceedings are ' "humane and liberal [in] character,” ’ [Gaudet, supra,] at 583” (Giglio v Farrell Lines, supra, at 929-930; see also, Pesce v Summa Corp., 54 Cal App 3d 86, 126 Cal Rptr 451).
In 1980, the United States Supreme Court held that the wife of a harbor worker who suffered personal injury aboard a vessel in State territorial waters could maintain an action for loss of society in general maritime law (American Export Lines v Alvez, 446 US 274, supra). In rejecting the argument that Gaudet (supra) should be limited to wrongful death cases, Justice Brennan, writing for the court, stated that "it is a settled canon of maritime jurisprudence that ' "it better becomes the humane and liberal character of proceedings in admiralty to give than to withhold the remedy, when not required to withhold it by established and inflexible rules.” ’ ” (American Export Lines v Alvez, supra, at 281-282.)
RETROACTIVITY
Defendant asserts that Alvez (supra) should not be applied *36 retroactively to the instant case, relying on the 1983 decision of the Fifth Circuit Court of Appeals in Stretton v Penrod Drilling Co. (701 F2d 441). Stretton involved a consolidated appeal of the dismissal of three actions commenced by wives of injured seamen for loss of society after their husbands had settled their claims for $650,000, $350,000 and $285,000, respectively, and after Alvez was decided. (See, Stretton v Penrod, supra, at 442-443.) The court ruled, applying the three-pronged balancing test set forth in Chevron Oil Co. v Hudson (404 US 97), that Alvez should not be given general retroactive effect. (But see, Colon v Gulf Trading Co., 576 F Supp 2d 1379 [D PR].) Relying on the clear-cut precedent in that circuit established in Christofferson v Halliburton Co. (534 F2d 1147 [1976]) which declined to follow Gaudet and instead held Igneri (supra) controlling, the Stretton court found that general retroactive application of Alvez would subject the defendants to "hardship and inequity” (Stretton v Penrod, supra, at 443) in light of the fact that, when settling the cases for substantial sums no releases were obtained from the wives, and also because maritime employers would be subjected to unanticipated claims that were not covered by insurance. (Supra, at 444.) In addition, the court noted that, even if the employers had adequate insurance, the insurance companies which did not anticipate such claims would be prejudiced. Further, where a seaman’s claim was fully settled, the employer would have had no incentive to promptly investigate the wives’ claims. (Supra, at 444-445.)
Defendant urges that Stretton (supra) mandates dismissal of Mrs. Gibson’s action. It errs. Stretton only precluded general retroactive application. The court specifically permitted retroactive application of Alvez (supra) to cases "pending on appeal” at the time Alvez was decided (Stretton v Penrod, supra, at 446). Defendant contends that, since the instant case is not pending "on appeal”, Alvez is inapplicable.
The rationale, however, set forth in Stretton (supra) for permitting limited retroactivity clearly indicates that it was not limited to cases pending on appeal. The court opined that this limited retroactivity "would prevent the inequitable result of punishing those who challenged the pre-existing case law but who were moving more slowly than Mrs. Alvez through the appellate process.” (Stretton v Penrod, supra, at 446.) The court then stated, in response to plaintiffs’ contention that Mallard v Aluminum Co. (634 F2d 236 [5th Cir 1981]) required general retroactive application, that "the issue *37 in Mallard would not have been one of general retroactive application, but one of a more limited retroactive application given to litigants whose cases are pending when a decision is made.” (Stretton v Penrod, supra, at 443, n 7.) "Mrs. Mallard was aware of the pre-existing case law and was actively challenging the viability of that law. Under our holding, parties in the position of Mrs. Mallard would be entitled to present their claims for loss of society” (Stretton v Penrod, supra, at 446, n 16).
Turning to the instant case, Mrs. Gibson, who instituted this action three years before Alvez (supra), was just as surely challenging the old rule. To restrict retroactivity to only those plaintiffs whose cases had moved to the appellate level is to impose an unacceptable distinction without foundation in reason or policy. Thus, even assuming arguendo that general retroactivity is precluded* (an issue which this court need not reach), equity demands that Mrs. Gibson be placed in the same position as Mrs. Alvez.
Accordingly, defendant’s motion to dismiss Anna Gibson’s claim is denied.

 It is interesting to note, although it is in no way controlling, that the New York Court of Appeals in Millington v Southeastern Elevator Co. (22 NY2d 498, 507-508), the case which granted wives in New York a valid cause of action for loss of consortium, denied general retroactivity but permitted limited application. (See also, Asch v City of New York, 34 AD2d 778 [1st Dept 1970].)