Salvatore GIGLIO and Carmela Giglio, Plaintiffs,

v.

FARRELL LINES, INC., Defendant.

No. 75 Civ. 6359.

United States District Court,
S. D. New York.

Jan. 5, 1977.

Zimmerman & Zimmerman, New York City, for plaintiffs; Edward D. Lory, Scarsdale, N. Y., of counsel.

Lilly, Sullivan & Purcell, New York City, for defendant; Peter A. Junge, New York City, of counsel.

## MEMORANDUM

LASKER, District Judge.

Salvatore and Carmela Giglio, citizens of Italy, bring this diversity action against Farrell Lines, Inc., a domestic corporation, to recover for injuries suffered by Salvatore, a longshoreman, while working aboard the S.S. African Neptune, a vessel owned and operated by the defendant. Farrell Lines moves to dismiss the cause of action of Carmela Giglio for failure to state a claim upon which relief can be granted.

Carmela Giglio alleges that as a result of Farrell Lines' negligence, her husband suffered severe injuries which, in turn, deprived her "of the services, society and consortium of her husband . . . to her damage." [1] Ms. Giglio seeks $1,000,000. in damages.

Farrell Lines moves to strike Ms. Giglio's cause of action on the grounds that general maritime law which controls this action does not recognize a claim for loss of consortium. Farrell relies principally upon *Igneri v. Cie. de Transports Oceaniques*, 323 F.2d 257 (2d Cir.), *cert. denied*, 376 U.S. 949, 84 S.Ct. 965, 11 L.Ed.2d 969 (1963), in which the Second Circuit held, after a detailed analysis of the law, that compensation for loss of consortium was not available to wives of maritime workers, or longshoremen.

In answer, Ms. Giglio suggests that the change in the common law and social climate since *Igneri*, with respect to compensation for loss of consortium, warrants a re-examination of the availability of the remedy in maritime actions. Furthermore, Ms. Giglio asserts that even if maritime law does not allow compensation, land-based law should apply in the case of a longshoreman's action, in light of alleged congressional intent in amending the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 905(b) (Supp.1972).

 In *Igneri*, *supra*, the Second Circuit reviewed both the common law and the law of the sea as to the right to damages for

---

1. Loss of consortium has been defined as "the mutual right of marriage partners to each other's society, companionship, and affection, including sexual intercourse . . ." *Igneri v. Cie. de Transports Oceaniques*, 323 F.2d 257 (2d Cir.) *cert. denied*, 376 U.S. 949, 84 S.Ct. 965, 11 L.Ed.2d 969 (1963). Society is the familial counterpart to consortium, *i. e.*, the loss of intimacy and companionship stemming from the family relationship. *Skidmore v. Grueninger*, 506 F.2d 716 (5th Cir. 1975).

loss of consortium where a longshoreman was injured in the course of his employment. Judge Friendly, writing for the court, concluded that the preponderance of authority would not allow such recovery. However, he remarked:

"Maritime law draws on many sources; when there are no clear precedents in the law of the sea, admiralty judges often look to the law prevailing on the land. See Gilmore and Black, Admiralty (1957), § 1–16. At least this much is true. If the common law recognized a wife's claim for loss of consortium, uniformly or nearly so, a United States admiralty court would approach the problem here by asking itself why it should not likewise do so; if the common law denied such a claim, uniformly or nearly so, the inquiry would be whether there was sufficient reason for an admiralty court's nevertheless recognizing one." *Id.* at 259–60 (citations omitted).

Thus, although the general maritime law is controlling where an injury occurs aboard ship, *Jordan v. States Marine Corp.*, 257 F.2d 232 (9th Cir. 1958), the common law precedent is clearly relevant to the availability of recovery for loss of consortium as a legitimate remedy where a stevedore is injured aboard ship or on land.

■ Since *Igneri* there has been substantial change in the common law view of a wife's recovery for loss of consortium. In 1963 only eleven states permitted recovery; today, 36 states recognize a wife's right to be compensated. *Christofferson v. Halliburton Co.*, 534 F.2d 1147 (5th Cir. 1976). Moreover, the United States Supreme Court may be regarded as having implicitly approved compensating the wife of a seaman for loss of consortium in maritime wrongful death actions by holding that a wife may recover for loss of society. *Sea-Land Services, Inc. v. Gaudet*, 414 U.S. 573, 587, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974).

In *Gaudet*, the Supreme Court was asked to extend its holding in *Moragne v. States Marine Lines*, 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970)—that an action for wrongful death is maintainable under fed-eral maritime law—to an action for wrongful death by a longshoreman's widow, although the decedent had recovered damages during his life for personal injuries. Included in the damages sought in *Gaudet* was a claim for loss of decedent's society. Finding that the widow's damages were distinct from her husband's the Court delineated the damages for which she and her family might recover:

"Our review of [the statutory and common law] authorities, and the policies of maritime law, persuade us that, under the maritime wrongful death remedy, the decedent's dependents may recover damages for their loss of support, services, and society, as well as funeral expenses." *Gaudet, supra*, 414 U.S. at 584, 94 S.Ct. at 814.

■ In determining whether recovery for loss of society (defined as including love, affection, care, attention, companionship, comfort and protection) was recoverable in a wrongful death action, the Court canvassed various state wrongful statutes, finding that a majority permitted such recovery. Thus, allowing compensation for loss of society in maritime wrongful death actions was approved as "align[ing] [that] remedy with a majority of state wrongful-death statutes." *Id.* at 587–88, 94 S.Ct. at 816. The Court went on to state that its decision was "compelled" if the Court was "to shape the remedy to comport with the humanitarian policy of the maritime law to show 'special solicitude' for those who are injured within its jurisdiction." *Id.* at 588, 94 S.Ct. at 816.

Based on the rationale of *Gaudet*, the Court of Appeals for the Fifth Circuit has held "that loss of consortium is a compensable harm" in a maritime wrongful death action. *Skidmore v. Grueninger*, 506 F.2d 716, 728 (1975). The Court concluded that differences between loss of society and loss of consortium were so minor that to allow recovery for one, while denying the other, would amount to "judicial hair-splitting carried to its extreme and would be in utter defiance of the spirit of [*Gaudet*]." *Id.* at

728 n. 10. *Skidmore* involved a wrongful death action.

More recently, the same court, has distinguished *Skidmore* and held that in an action for personal injuries only, the wife of an injured seaman has no right to recover damages for loss of consortium. *Christofferson v. Halliburton Co.*, 534 F.2d 1147 (5th Cir. 1976). The *Christofferson* court refused to adopt the plaintiff's thesis that *Igneri* had lost much of its force due to change in the land laws and the impact of *Gaudet*. The court determined that since alteration of land law had been effected largely through statutory modification, rather than through a change in the common law, there was no clear *common law* preference for allowing recovery. Moreover, the Fifth Circuit declined to extend the rule of recovery for loss of consortium to instances other than wrongful death actions—such as was the case in *Gaudet*. 534 F.2d at 1150.

■ With due respect for the Fifth Circuit's analysis, we believe it unlikely that the *Igneri* court meant to examine the "common law" in the narrow sense of judge-made law only. Indeed, in Judge Friendly's discussion of the twelve jurisdictions that recognized the right of a wife to recover for loss of consortium, he noted that one had done so by statute. 323 F.2d at 260. Moreover, at its outset the opinion asserts that where clear precedents in the law of the sea are lacking, maritime law may "look to the law prevailing in the land." *Id.* at 259. Judge made law was not distinguished from statutory enactments and there seems little reason to apply such a limitation to *Igneri* now.

■ Furthermore, although the Supreme Court's decision in *Gaudet* involved a wrongful death recovery only, the broad language of the opinion reflects the view that admiralty proceedings are " 'humane and liberal [in] character,' " 414 U.S. at 583, 94 S.Ct. at 814, *quoting* the *Sea Gull*, 21 F.Cas. p. 909, No. 12,578 (C.C.Md.1865). Discussing the general view of recovery for loss of consortium in non-death actions, the Court noted that for years "juries have assessed damages for loss of consortium." The Court cited *New York & Long Branch Steamboat Co. v. Johnson*, 195 F. 740 (3d Cir. 1912),[2] to illustrate that compensation for loss of consortium had been recovered in admiralty cases. (*Igneri* was merely noted as taking a different view), *Gaudet, supra,* 414 U.S. at 589 n. 25, 94 S.Ct. at 817. A logical extension of the Supreme Court's reasoning, coupled with the "gravitational pull" of the increasingly favorable common law attitude toward loss of consortium, *Igneri, supra,* at 267, indicates that compensation for such loss may well be an idea whose time has come.[3] See *Pesce v. Summa Corporation*, 54 Cal.App.3d 86, 126 Cal.Rptr. 451 (1975), in which the California Court of Appeal concluded that there was no reason to distinguish between a husband's death or mere injury "in respect of the wife's entitlement to recover for loss of consortium," *Id.* at 455, and allowed recovery.

■ We conclude therefore that Farrell Lines' motion to dismiss Mrs. Giglio's cause of action should be denied. However, since such denial rests upon a view that the last pronouncement of the law by the Court of Appeals of this Circuit no longer has force the question is certified for appeal under the provisions of 28 U.S.C. § 1292(b) as a controlling question of law as to which there is substantial ground for difference of

---

2. In that case a husband was allowed to recover for losses he suffered through the shipboard injury of his wife. *Igneri*, it should be noted, made no distinction between the sexes, barring all actions for loss of consortium.

3. In the 1972 amendments to the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 *et seq.*, Congress suggested that land-based principles of negligence should prevail with regard to the standard of care of vessels on which longshoremen work. *See Na-*

*poli v. Hellenic Lines, Ltd.*, 536 F.2d 505, 509 (2d Cir. 1976). This does not indicate, however, that admiralty concepts are no longer applicable to longshoremen in other contexts. Since *Igneri* sanctioned an examination of land-based law where there are no clear precedents in admiralty, it is unnecessary to decide whether the 1972 amendments constitute a more radical departure from the law of the sea than that set out in *Napoli*.

opinion, the resolution of which may materially advance the ultimate termination of the litigation.

It is so ordered.