OPINION OF THE COURT
Jasen, J.
To be resolved on this appeal is the question whether the wife of an injured harbor worker may seek recovery for loss of consortium occasioned by her husband’s injury.
Respondent, while working as a ship’s lasher aboard appellant’s[1] vessel, the "Export Builder”, was injured within the *637 territorial waters of this State when struck by the handle of an allegedly defective tension jack, resulting in the enucleation of his right eye. After commencing this action, respondent moved to amend his complaint to add his spouse as a party plaintiff in an action for loss of consortium. Special Term denied respondent’s motion, reasoning that the general maritime law does not afford a remedy for loss of consortium. The Appellate Division unanimously reversed, granted respondent’s motion and certified the following question: "Was the order of this Court, which reversed the order of Supreme Court an abuse of discretion as a matter of law?” The order of the Appellate Division should be affirmed and the certified question answered in the negative.
In denying respondent’s motion, Special Term relied entirely upon Igneri v Cie. de Transports Oceaniques (323 F2d 257, cert den 376 US 949), in which the Second Circuit held that the spouse of a longshoreman injured while working aboard a vessel in Brooklyn harbor had no cause of action for loss of consortium whether caused by negligence of the owner or unseaworthiness of the vessel. (323 F2d, at pp 265-268, supra.) In reaching this conclusion, the court observed that maritime law will often draw upon the law of the land where clear precedent does not exist in the former. With respect to recovery for loss of consortium, the court posited that if an admiralty court found that "the common law recognized a wife’s claim for loss of consortium, uniformly or nearly so,” it would query why it should not similarly recognize such a claim. (Id., at p 260.)
Upon examining the state of the common law, the court found that although the great majority of States recognized the existence of a cause of action by a husband for loss of consortium, only 12 jurisdictions permitted a similar recovery by a wife. In light of the absence of a clear rule either permitting or prohibiting such recovery, the court turned to a consideration of which rule best comported with then existing principles of maritime law. Relying primarily upon the unavailability of such relief to the wife of an injured seaman under the Jones Act (US Code, tit 46, § 688), the court concluded that it would be anamolous to permit recovery for loss of consortium by the wife of a longshoreman, whether on a theory of negligence or unseaworthiness. (Id., at pp 265-268.)
In the years since the Second Circuit’s decision in Igneri, maritime law has not remained static but, like the common *638 law, has undergone significant change. In 1963, the year of the Igneri decision, the Supreme Court’s decision in The Harrisburg (119 US 199, 213), still ruled the day, holding that maritime law did not afford a cause of action for wrongful death. However, in 1970, the Supreme Court overruled The Harrisburg and recognized the existence of an action for wrongful death under the general maritime law. (Moragne v States Mar. Lines, 398 US 375, 409.) In so holding, the court left for future consideration the precise scope of the remedy recognized. (Id., at pp 405-408.)
Further delineation of the breadth of the wrongful death cause of action afforded by general maritime law soon followed in Sea-Land Servs. v Gaudet (414 US 573), wherein the court held that a decedent’s dependents may recover for, among other elements of damage, loss of society, which the court defined as including a decedent’s "love, affection, care, attention, companionship, comfort, and protection.” (Id., at p 585 [footnote omitted].) The court was careful, however, to exclude from the concept of society recovery for mental anguish or grief.[2] (Id., at n 17.)
In assessing the impact of these cases upon resolution of the issue before us, we proceed cautiously cognizant that it is the general maritime law that governs the rights and liabilities of the parties. (Romero v International Term. Operating Co., 358 US 354, 373; Garrett v Moore-McCormack Co., 317 US 239, 245; Celeste v Prudential-Grace Lines, 35 NY2d 60, 62-63; Matter of Rederi [Dow Chem. Co.], 25 NY2d 576, 581, cert den 398 US 939; ALI Study of the Division of Jurisdiction Between State and Federal Courts, § 1316[b], at p 239 [Off Draft, 1969].) Were this a case in which State law were applicable notwithstanding the existence of a Federal question (see, e.g., People v Payton, 45 NY2d 300, 312), we would be free to render a decision on such Federal question differing from pertinent Federal court decisions save a controlling determination of the Supreme Court. (People ex rel. Ray v Martin, 294 NY 61, 73, affd 326 US 496.) To be distinguished, however, are those unique areas, such as admiralty and maritime matters, which either by Constitution or Congressional legislation have been deemed to require a uniform body of national law. (See, generally, Hart, Relations Between State and Federal Law, 54 *639 Col L Rev 489.) In such areas not only does there exist a Federal question, but more importantly, an answer obtainable solely by recourse to Federal law. (Cf. Teamsters Local v Lucas Flour Co., 369 US 95, 102.) Thus, notwithstanding the absence of a controlling Supreme Court decision, were there a uniform Federal rule, albeit one established by lower Federal courts, we would be bound in a case such as the one at hand to apply it.
It is, therefore, with great deference that we proceed to an analysis of the question before us. Critical to its resolution is the effect which Moragne and Gaudet have had upon general maritime law and in particular upon the continued validity of Igneri. Judicial interpretation of these developments has not been uniform, leaving uncertain whether there presently exists a cause of action for loss of consortium in a personal injury action under the general maritime law. (Compare Giglio v Farrell Lines, 424 F Supp 927, mot for lv to app den No. 77-8014 [2d Cir, Feb. 17, 1977],[3] and Lemon v Bank Lines, 411 F Supp 677, dsmd upon reconsideration in light of Christofferson v Halliburton Co., 534 F2d 1147, affd without opn 562 F2d 1259, and Pesce v Summa Corp., 54 Cal App 3d 86 [upholding cause of action for loss of consortium], with Christofferson v Halliburton Co., 534 F2d 1147, supra, and Wetters v Moore-McCormack Lines, 1977 AMC 1529, and Davidson v Reederei, 295 So 2d 700 [Fla] [rejecting cause of action for loss of consortium].)
In our opinion, examination of the ratio decedendi of the Igneri decision reveals an erosion of its theoretical underpinnings so severe as to precipitate its collapse under its own weight. To begin with, unlike the state of the law of the land as to recovery for loss of consortium then prevailing, the great majority of States, including New York, now recognize such a cause of action by either husband or wife in a personal injury action.[4] In dispelling any argument that a wife does not have *640 as great a right to her husband’s consortium as he to hers, we stated: " 'The gist of the matter is that in today’s society the wife’s position is analogous to that of a partner, neither kitchen slattern nor upstairs maid. Her duties and responsibilities in respect of the family unit complement those of the husband, extending only to another sphere. In the good times she lights the hearth with her own inimitable glow. But when tragedy strikes it is a part of her unique glory that, forsaking the shelter, the comfort, the warmth of the home, she puts her arm and shoulder to the plow. We are not at the heart of the issue. In such circumstances, when her husband’s love is denied her, his strength sapped, and his protection destroyed, in short, when she has been forced by the defendant to exchange a heart for a husk, we are urged to rule that she has suffered no loss compensable at the law. But let some scoundrel dent a dishpan in the family kitchen and the law, in all its majesty, will convene the court, will march with measured tread to the halls of justice, and will there suffer a jury of her peers to assess the damages. Why are we asked, then, in the case before us, to look the other way? Is this what is meant when it is said that justice is blind?’ ” (Millington v Southeastern Elevator Co., 22 NY2d 498, 503-504, quoting Montgomery v Stephan, 359 Mich 33, 48-49.)
In addition to the absence of a rule at common law recognizing "a wife’s claim for loss of consortium, uniformly or nearly so,” (Igneri v Cie. de Transports Oceaniques, 323 F2d, at p 260, supra), the Second Circuit hinged its decision upon the anomaly it perceived in permitting a longshoreman’s wife to recover for loss of consortium when the wife of an injured seaman would not be afforded a similar right under the Jones Act (US Code, tit 46, § 688). (323 F2d, at pp 266-268.) That such anomalies do exist in the remedies afforded injured maritime workers is, however, a currently accepted fact of
*641 life. For example, although the wife of a deceased longshoreman may recover for loss of consortium in a wrongful death action under the general maritime law (Sea-Land Servs. v Gaudet, 414 US 573, supra), recovery for wrongful death under the Death on the High Seas Act (US Code, tit 46, §§ 761, 762) is limited to pecuniary loss and does not afford a remedy for loss of a wife’s consortium. (Mobil Oil Corp. v Higginbotham, 436 US 618.)
The Second Circuit’s concern, in Igneri, with the absence of a clear common-law rule as to recovery for loss of consortium and with the avoidance of anomalous remedies in maritime law is clearly manifested in its observation: "If there were evidence that maritime law generally recognized a claim for negligent injury to such an intangible right, or if the common law clearly authorized a wife’s recovery, the gravitational pull of such concepts with respect to the wife of a longshoreman might be stronger than that of the analogy to the statute denying such recovery to a seaman’s wife. But, with neither of these conditions realized, our duty to avoid capricious differences in treatment between similarly situated persons forbids our fashioning a rule that would place the spouse of a harbor-worker in a different, and better, position than the spouse of a seaman.” (323 F2d, at p 267, supra.) We believe that the clear recognition by the law of the land of the right of a wife to recover for loss of consortium in a personal injury action, together with the recognition of such right in wrongful death actions under the general maritime law, exert, in the words of the Second Circuit, a "gravitational pull” of sufficient intensity to require recognition of respondent’s claim. (See 2 Benedict, Admiralty [7th rev ed], § 12, pp 1-66 — 1-74; Comment, Loss of Consortium in Admiralty: A Yet Unsettled Question, 1977 BYU L Rev 133.)
In reaching this conclusion, we are cognizant that the Fifth Circuit has interpreted Gaudet (supra) as limited to authorizing recovery for loss of consortium under the general maritime law to wrongful death actions. (Christofferson v Halliburton Co., 534 F2d 1147, supra.) Critical to the court’s determination were two factors: first, its belief that recognition of a wife’s claim for loss of consortium by 37 States is not indicative of a uniformity in the common law; and, second, its interpretation of Gaudet as holding that a cause of action for loss of consortium cannot accrue until the decedent’s death. (Id., at pp 1150-1151.)
*642 With all due respect, we cannot agree with the Christofferson court’s reasoning. Concerning the state of the common law, it is difficult to conclude that a clear rule authorizing a wife’s recovery for loss of consortium in a personal injury action does not exist. In Gaudet, the Supreme Court surveyed State wrongful death statutes concluding that "[a] clear majority of States” permit recovery for loss of society. (414 US, at p 587, supra.) It supported this proposition by the finding that 27 of the 44 State and territorial wrongful death statutes that measure damages by the loss sustained by beneficiaries permit recovery for loss of society. (Id., at n 21.) In our view, it would be overly artificial to view the present state of the common law as to recovery for loss of consortium in a personal injury action as anything but nearly uniform. Moreover, we would also question the relevancy of the Christofferson court’s statement: "Much of the change in the law has come about through statutory modification of the law, rather than change in the common law.” (534 F2d, at p 1150, supra.) In our opinion, it matters little whether a State’s recognition of the cause of action at issue is rooted in statute or decisional law.
As to the Supreme Court’s reference to the accrual of a cause of action for loss of consortium, the factual setting in Gaudet is critical. There, the injured seaman had already recovered for his personal injuries prior to his death. Thereafter, his widow commenced a wrongful death action seeking as an element of damage recovery for loss of society. The trial court dismissed the action on the ground of res judicata. In affirming the reversal of this order by the Circuit Court of Appeals (463 F2d 1331), the Supreme Court stated: "Obviously, the decedent’s recovery did not include damages for the dependents’ loss of services or of society, and funeral expenses. Indeed, these losses — unique to the decedent’s dependents— could not accrue until the decedent’s death.” (414 US, at pp 591-592, supra.) It is this language which the Fifth Circuit in Christofferson interpreted as implicitly limiting the right to recover for loss of consortium to wrongful death actions on the ground that a cause of action for loss of consortium does not accrue absent death. We would not read this language so broadly as it would appear to have been intended merely to identify the widow’s wrongful death action as an action separate and apart from the decedent’s personal injury action, precluding application of res judicata principles.
In holding as we do today, we are sensitive to the limited *643 role of the State court in maritime matters, bound as it is to apply Federal maritime law. In applying this body of law, we are equally sensitive to the well-settled principle that "certainly it better becomes the humane and liberal character of proceedings in admiralty to give than to withhold the remedy, when not required to withhold it by established and inflexible rules.” (Moragne v States Mar. Lines, 398 US 375, 387, supra, quoting The Sea Gull, 21 F Cas 909, 910.) Examination of current maritime law réveals, in our opinion, an absence of any established and inflexible rule barring recognition of the claim before us.
Accordingly, the order of the Appellate Division should be affirmed, with costs, and the certified question answered in the negative.

. Appellant American Export Lines, Inc., impleaded respondent’s employer, Joseph Vinal Ship Maintenance, Inc., as a third-party defendant.

. With this definition in mind, the terms consortium and society will be used interchangeably.

. Giglio was subsequently dismissed in its entirety. (No. 75 Civ 6359, SONY, Jan. 5, 1979, app pending No. 79-7078 [2d Cir].)

. The following States recognize a wife’s cause of action for loss of consortium in a personal injury action either by statute or decisional law: (Swartz v United States Steel Corp., 293 Ala 439; Schreiner v Fruit & Equit. Life Assur. Soc., 519 P2d 462 [Ala]; City of Glendale v Bradshaw, 108 Ariz 582; Missouri Pacific Transp. Co. v Miller, 227 Ark 351; Rodriguez v Bethlehem Steel Corp., 12 Cal 3d 382; Col Rev Stat, § 14-2-209; Yoner v Adams, 53 Del 229; Gates v Foley, 247 So 2d 40 [Fla]; Brown v Georgia-Tennessee Coaches, 88 Ga App 519; Nichols v Sonneman, 91 Idaho 199; Dini v Naiditch, 20 111 2d 406; Troue v Marker, 253 Ind 284; Acuff v Schmit, 248 Iowa 272; *640 Kan Stat Ann, § 23-205; Kotsiris v Ling, 451 SW2d 411 [Ky]; Me Rev Stat, tit 19, § 167-A; Deems v Western Md. Ry. Co., 247 Md 95; Diaz v Lilly & Co., 364 Mass 153; Montgomery v Stephan, 359 Mich 33; Thill v Modern Erecting Co., 284 Minn 508; Miss Code Ann, § 93-3-1; Novak v Kansas City Tr., 365 SW2d 539 [Mo]; Duffy v Lipsman-Fulkerson & Co., 200 F Supp 71; Cooney v Moomaw, 109 F Supp 448; NH Rev Stat Ann, § 507:8-a; General Elec. Co. v Bush, 88 Nev 360; Ekalo v Constructive Serv. Corp., 46 NJ 82; Millington v Southeastern Elevator Co., 22 NY2d 498; Clouston v Remlinger Oldsmobile Cadillac, 22 Ohio St 2d 65; Okla Stat Ann, tit 32, § 15; Ore Rev Stat, § 108.010; Hopkins v Blanco, 457 Pa 90; Hoekstra v Helgeland, 78 SD 82; Tenn Code Ann, § 25-109; W Va Code, § 48-3-19a; Moran v Quality Aluminum Casting Co., 34 Wis 2d 542.)