JOSE VARGAS, Plaintiff, v AMERICAN EXPORT LINES, INC., Defendant.

AMERICAN EXPORT LINES, INC., Third-Party Plaintiff, v UNIVERSAL MARITIME SERVICE CORP., Third-Party Defendant.

UNIVERSAL MARITIME SERVICE CORP., Fourth-Party Plaintiff-Respondent, v PORTWIDE CARGO SECURING CO., Fourth-Party Defendant, and A & G MAINTENANCE CORP., Fourth-Party Defendant-Appellant.

First Department, March 12, 1985

### APPEARANCES OF COUNSEL

*Dennis Drucker* of counsel (*Raymond C. Green* and *Leonard M. Schnitzer* with him on the brief; *Raymond C. Green,* attorney), for fourth-party defendant-appellant.

*Charles L. Bach, Jr.,* of counsel (*Bruce F. Gilpatrick* with him on the brief; *Heidell, Pittoni & Moran, P. C.,* attorneys), for fourth-party plaintiff-respondent.

### OPINION OF THE COURT

KASSAL, J.

The issue on the appeal is the construction to be accorded to the "Exclusiveness of liability" provisions of the Longshoremen's and Harbor Workers' Compensation Act (LHWCA), 33 USC § 905 (a), (b), in terms of whether the fourth-party complaint states a valid cause of action for indemnity against

plaintiff's employer, which had paid compensation benefits. Special Term denied the motion to dismiss, pursuant to CPLR 3211 (a) (7), holding that while the statute barred a claim over by a vessel against a compensation-paying employer, it did not preclude the assertion of a claim over by a nonvessel, such as the fourth-party plaintiff stevedore. We disagree and, accordingly, reverse and dismiss the fourth-party complaint as against the employer.

Plaintiff was injured on September 10, 1977, while working as a lasher aboard the vessel S.S. *Admiral William Callaghan.* At the time, plaintiff was employed by the fourth-party defendant, A & G Maintenance Corp. As a result of the injuries, he obtained compensation benefits from his employer under LHWCA and, thereafter, commenced this action against the owner of the vessel, American Export Lines, Inc., alleging that the injury resulted from the negligence of the vessel in providing improper equipment. Plaintiff was injured while he was in the process of lashing a tank when a turnbuckle snapped, striking his knee. The owner of the vessel impleaded third-party defendant Universal Maritime Service Corporation, which had been performing stevedore work on the ship. American claimed in the third-party action that the injury resulted from Universal's failure to properly supervise the work. Universal, in turn, commenced a fourth-party action against plaintiff's employer, alleging it was entitled to indemnity by reason of the failure of A & G to provide its employee with a safe place to work and breach of warranty. A & G thereupon moved to dismiss the fourth-party action, contending that the fourth-party action was barred by the exclusiveness of liability provisions in the Longshoremen's and Harbor Workers' Compensation Act (33 USC § 905 [a], [b]).

The action was instituted in State court, pursuant to the grant of concurrent jurisdiction under the "Saving to suitors" clause of the Judiciary Act (28 USC § 1333), and, concededly, is governed by Federal maritime law, not New York law (*Garrett v Moore-McCormack Co.,* 317 US 239, 245; *Alvez v American Export Lines,* 46 NY2d 634, 638; *Celeste v Prudential-Grace Lines,* 35 NY2d 60, 62-63). It is undisputed that the injury was sustained during the course of maritime employment, as defined in 33 USC § 902 and, therefore, plaintiff was entitled to and did receive workers' compensation benefits pursuant to the LHWCA. Under the terms of the Act, the employer's statutory liability to its employee for compensation benefits is "exclusive and in place of all other liability of such employer to the employee" (33 USC § 905 [a]). LHWCA, section 905 (a), (b), entitled "Exclusiveness of liability", provides as follows:

"(a) The liability of an employer prescribed in section 904 of this title shall be *exclusive and in place of all other liability of such employer* to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death, except that if an employer fails to secure payment of compensation as required by this chapter, an injured employee, or his legal representative in case death results from the injury, may elect to claim compensation under the chapter, or to maintain an action at law or in admiralty for damages on account of such injury or death * * *

"(b) In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title, and *the employer shall not be liable to the vessel for such damages directly or indirectly* and any agreements or warranties to the contrary shall be void * * * The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred. The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter" (emphasis added).

Subdivision (b) of section 905 was added to the statute by amendment in 1972 (Pub L 92-576). Prior to the 1972 amendment, then section 905 (the present § 905 [a]) was held to preclude a third-party claim for contribution or indemnity against a compensation-paying employer, except where based upon an express agreement for indemnity. (*See, Halcyon Lines v Haenn Ship Corp.*, 342 US 282; *Cooper Stevedoring Co. v Kopke, Inc.*, 417 US 106; *Kenny v Bacolo*, 61 NY2d 642.) In *Ryan Co. v Pan-Atlantic Corp.* (350 US 124), the Supreme Court held that a shipowner who had been found liable without fault based upon the doctrine of unseaworthiness, could assert a claim for indemnity against a stevedore employer based upon an alleged breach of an express or implied warranty of workmanlike performance. Even in the absence of an express agreement of indemnity, it was concluded that the shipowner could interpose a claim for indemnity founded upon a warranty of workmanlike service to perform properly and safely, a warranty implied in the relationship between the stevedore and the shipowner "comparable to a manufacturer's warranty of the soundness of its manufactured product." (350 US, at pp 133-134.) The exclusiveness of liability

provision of 33 USC § 905 was avoided on an analysis that any recovery over was premised upon an independent contract right and, therefore, was not "on account of" the injury to the employee (*see,* discussion in *Zapico v Bucyrus-Erie Co.,* 579 F2d 714, 720).

The 1972 amendment, adding section 905 (b), effected a radical change in the statutory scheme by abolishing the longshoreman's right to proceed against the vessel on an unseaworthiness theory, limiting the shipowner's liability to negligence and abolishing any right of the vessel to seek indemnity against the employer, "directly or indirectly." Clearly, the intent of the amendment was to overrule the effect of the United States Supreme Court decisions, like *Ryan Co. v Pan-Atlantic Corp.* (*supra*), which made an employer circuitously liable for injuries sustained by an employee by permitting the employee to proceed against the vessel for unseaworthiness and the vessel to claim over for indemnity against the employer who had paid compensation benefits under the Act. The Supreme Court observed in *Scindia Steam Nav. Co. v De Los Santos* (451 US 156, 165): "The 1972 Amendments, particularly by adding § 905 (b), radically changed this scheme of things. The compensation payments due the longshoreman from the stevedore for injuries incurred in the course of his employment were substantially increased; the longshoreman's right to recover for unseaworthiness was abolished; his right to recover from the shipowner for negligence was preserved in § 905 (b), which provided a statutory negligence action against the ship; and the stevedore's obligation to indemnify the shipowner if the latter was held liable to the longshoreman was abolished."

It is clear that the *quid pro quo* for the abolition of the employer's obligation to indemnify the shipowner was the elimination of the vessel's absolute liability for unseaworthiness. The courts which have considered the issue have concluded that the statute does not operate to bar indemnity claims by nonvessels against maritime employers (*Zapico v Bucyrus-Erie Co., supra,* p 721; *Pippen v Shell Oil Co.,* 661 F2d 378). In *Zapico,* Zapico and Millan were longshoremen employed by Atlantic Container Line, a stevedore. Zapico was killed and Millan injured in an accident aboard the S.S. *Atlantic Causeway,* a vessel owned by Cunard Steamship Co., during the course of loading a hydrocrane manufactured by Bucyrus-Erie. In the action against the manufacturer of the crane, Bucyrus (a nonvessel), asserted a third-party claim against the employer, Atlantic Container. The employer contended that it was immune from any such third-party suit since, as a compensation-paying employer, it had no

liability under 33 USC § 905 (a), (b). The Second Circuit Court of Appeals, for other reasons not relevant here, dismissed the third-party complaint. However, in an opinion by Judge Friendly, it did take cognizance of the fact that the 1972 amendment, adding section 905 (b), was designed to prevent *Ryan* indemnity actions by vessels but did not preclude a claim over by nonvessels: "The shipowners got a *quid pro quo* for the loss of their indemnity rights. Prior to the 1972 amendments they were liable to injured longshoremen not only for the ship's own negligence but also on a strict liability theory (the 'unseaworthiness' doctrine) for conditions which often were actually created by the stevedore * * * The 1972 amendments eliminated the unseaworthiness theory and limited vessel liability to negligence in exchange for the surrender of the vessel's indemnity rights. See H.R. Rep. No. 1441, *supra,* 3 U.S. Code Cong. & Admin. News at 4701-05 (1972); *Munoz v. Flota Merchante Grancolombiana, S.A.,* 553 F.2d 837, 840 (2 Cir. 1977). No such *quid pro quo* was offered to non-vessels. Given the clear statutory language and the absence of legislative history at variance with it, we would hesitate to hold that § 905 (b) by its own force cuts off the availability of *Ryan* indemnity to a non-vessel in all cases where the concurring negligence of a stevedoring company has caused injuries to the latter's employees" (579 F2d, at pp 721-722).

Similarly, in *Pippen v Shell Oil Co.* (*supra,* p 387), the Fifth Circuit Court of Appeals, relying upon the Second Circuit decision in *Zapico* (*supra*) observed: "Inasmuch as section 905 (b) prohibits indemnity actions by vessels only, this Court would be reluctant to extend that prohibition to nonvessels." In that case, plaintiff was a wireline operator employed by Superior Electric and was working aboard a vessel owned by Inland Well, which had been leased or chartered to Shell Oil to drill gas wells in Louisiana waters. Pippen was injured when he slipped on pipe lubricant and calcium chloride which was on the deck and commenced an action against the owner and the lessee, both of whom interposed third-party claims for indemnity and contribution against plaintiff's employer, Superior Electric. The court affirmed the dismissal of the third-party claims, insofar as concerned the claim by the vessel, Inland Well, holding (*supra,* p 386): "Since this section [33 USC § 905 (b)] expressly forbids an action by the vessel against the employer for damages for an injury caused by the negligence of the vessel, the action by Inland Well against Superior Electric was properly dismissed." The court also sustained the dismissal of Shell Oil's (the nonvessel) third-party claim against the employer, finding that, in

opposing the motion for summary judgment, the lessee did not offer any evidence of an express or implied contract of indemnity with Superior Electric. On that basis, the court did not reach the issue of whether 33 USC § 905 (b) prohibited a nonvessel from bringing a *Ryan*-type action for indemnity against the employer.

Thus, it appears from the Federal authorities that, while section 905 (b) has been construed to prohibit a vessel from obtaining indemnity from a compensation-paying employer, it does not bar a nonvessel from proceeding on an indemnity claim against an employer who had paid compensation benefits to the injured employee. On this basis, Universal Maritime argues here that the statute does not operate to preclude its fourth-party claim against A & G Maintenance since, as a nonvessel, its right to assert such a claim is not governed by either subdivision (a) or (b) of section 905. The argument, however, overlooks the fact that the fourth-party complaint here would indirectly afford indemnity to the vessel, against whom the action was brought and which had proceeded on a third-party claim against Universal Maritime, the stevedore. (*See, Gaudet v McDermott & Co.,* 568 F Supp 795.) The factual situation in our case is indistinguishable from that in *Gaudet.* There, plaintiff longshoreman, injured while working aboard a barge owned by J. Ray McDermott, sued the owner of the barge, who impleaded Conoco, Inc., a platform owner (a nonvessel), which, in turn, filed a fourth-party claim for indemnity against plaintiff's employer, Keystone Inspection Services. Keystone moved for summary judgment dismissing the fourth-party claim as barred by the Longshoremen's and Harbor Workers' Compensation Act, 33 USC § 905 (b). The court, reviewing the legislative history underlying the 1972 amendment, held that "section 905 (b) allows a nonvessel to bring an indemnity action against an employer in contract where the nonvessel has caused or contributed to a longshoreman's injury." (568 F Supp, at p 798.) However, distinguishing the factual situation in both *Zapico* (579 F2d 714, *supra*) and *Pippen* (661 F2d 378, *supra*), the court in *Gaudet* (*supra,* pp 798-799) concluded that to permit the fourth-party claim for indemnity under the facts of that case would improperly allow the vessel indirectly to obtain indemnity from the employer who had paid compensation benefits which was expressly prohibited by section 905 (b): "The difference between this case and *Zapico* and *Pippen* is relatively simple. In the latter two cases, the nonvessel sought indemnity from the employer in order to pay the longshoreman. The employer was thus indirectly liable (or potentially liable) to the longshoreman, not

to the vessel. By contrast, the nonvessel here is seeking indemnity from the employer in order to indemnify the vessel. Thus, the employer in this case, if required to indemnify the nonvessel, would be made indirectly liable, not to the longshoreman, but to the vessel. This is precisely what section 905 (b) forbids. That section provides, in pertinent part, that 'the employer shall not be liable to the vessel for * * * damages directly or indirectly and any agreements or warranties to the contrary shall be void.' In short, then, Conoco is asking the Court to resurrect the vessel's *Ryan* triangle remedy. Conoco is asking that the vessel be allowed to do indirectly what the vessel clearly cannot do directly, namely, get indemnified by the employer. Given both the purpose and the language of section 905 (b), the Court must decline Conoco's request."

The same holds true in this case and, taking into account the express legislative intent underlying the passage of the 1972 amendment, the fourth-party claim here cannot be sustained. In our case, as in *Gaudet (supra)*, the action was brought against the vessel, which impleaded a nonvessel (in this case, the stevedore and in *Gaudet,* the platform owner), and it, in turn, interposed a fourth-party claim for indemnity against the compensation-paying employer. Unlike the situation in *Zapico (supra)*, the fourth-party claim here would make the employer liable, not to the injured employee, but would indirectly indemnify the vessel, contrary to the spirit and letter of section 905 (b). The result would be to resurrect the circuitous liability sustained in *Ryan* (350 US 124, *supra*), which Congress intended to eliminate when it enacted subdivision (b) of section 905. This would permit the vessel to accomplish indirectly what it cannot do directly, in contravention of the express language and underlying purpose of the statute. We decline to so hold and, accordingly, we reverse and dismiss the fourth-party complaint as against the compensation-paying employer.

Accordingly, the order, Supreme Court, New York County (Arnold Fraiman, J.), entered March 25, 1983, denying the motion by the fourth-party defendant, A & G Maintenance Corp., to dismiss the fourth-party complaint, should be reversed, on the law, with costs and disbursements, the motion granted and the fourth-party complaint dismissed as against the said fourth-party defendant as barred by the Longshoremen's and Harbor Workers' Compensation Act, 33 USC § 905 (a), (b).

Sullivan, J. P., Asch and Milonas, JJ., concur.

Order, Supreme Court, New York County, entered on March 25, 1983, unanimously reversed, on the law, the motion to

dismiss the fourth-party complaint granted and the fourth-party complaint dismissed as against the said fourth-party defendant as barred by the Longshoremen's and Harbor Workers' Compensation Act, 33 USC § 905 (a), (b). Fourth-party defendant-appellant shall recover of fourth-party plaintiff-respondent $75 costs and disbursements of this appeal.