[608 NYS2d 166]

RONNIE C. MOORE, as Commissioner of Insurance of the Commonwealth of Kentucky, Respondent, v AEGON REINSURANCE COMPANY OF AMERICA et al., Defendants, and Instituto De Resseguros Do Brasil (IRB), Appellant.

RONNIE C. MOORE, as Commissioner of Insurance of the Commonwealth of Kentucky, Respondent, v AA MUTUAL INSURANCE ASSOC. LTD. et al., Defendants, and Instituto De Resseguros Do Brasil (IRB), Appellant.

First Department, February 24, 1994

APPEARANCES OF COUNSEL

*Howard R. Reiss* of counsel *(Shatzkin & Reiss,* attorneys), for appellant.

*William F. Costigan* of counsel *(W. Henry Jernigan, Jr.,* and *John P. McConnell* with him on the brief; *Jackson & Kelly* and *Costigan & Berns,* attorneys), for respondent.

### OPINION OF THE COURT

Ross, J.

██ ██ The issue presented by these appeals is whether the defendant-appellant, Instituto De Resseguros Do Brasil (IRB), is required by New York State Insurance Law § 1213 (c) (1) to post a preanswer security. In a decision dated October 6, 1992, the IAS Court consolidated two separate motions for determination and found, *inter alia,* that while the Foreign Sovereign Immunities Act of 1976 (FSIA; 28 USC § 1602 *et seq.)* renders foreign States and their agencies and instrumentalities immune from the preanswer security requirement, IRB was not an instrumentality of the government of Brazil and was therefore required by Insurance Law § 1213 (c) (1) to post a preanswer security.[1] In the order appealed, entered February 8, 1993, the IAS Court granted IRB's motions to renew the prior motions but adhered to its prior decision. We agree with the court at IAS that, as determined in a related Federal matter involving identical parties and the identical issue *(Moore v National Distillers & Chem. Corp.,* 143 FRD 526 [SD NY]), the Foreign Sovereign Immunities Act (28 USC § 1609) renders foreign States and political subdivisions, agencies or instrumentalities of foreign States, immune from the preanswer security requirement of Insurance Law § 1213 (c) (1). However, we disagree with the trial court's determination that the aforesaid decision (143 FRD 526, *supra)* does not collaterally estop the Commissioner from raising the issue concerning whether or not IRB is an instrumentality of the Brazilian government in this action. Moreover, based upon our own review we find, in any event, that IRB is an instrumentality of the Brazilian government immune from the requirements of Insurance Law § 1213 (c) (1) and dispose of these appeals accordingly.

---

1. The October 6, 1992 decision resulted in the order appealed dated February 4, 1993 and entered February 17, 1993 granting the plaintiff's motion to, *inter alia,* strike IRB's answer unless an appropriate bond was posted. Defendant-appellant also seeks to appeal the decision itself.

Plaintiff, the Commissioner of Insurance of the Commonwealth of Kentucky (Commissioner), commenced two separate actions in this State, against IRB and various other retrocessionaire insurance companies,[2] in connection with the liquidation of Delta America Re Insurance Company (Delta). Delta is an insolvent reinsurance company chartered under the laws of Kentucky and authorized to do business in New York. The two actions commenced by the Commissioner in New York State were based upon alleged breaches by the defendant retrocessionaires of various retrocessional insurance contracts (called treaties) with Delta Re. The actions originally commenced by the Commissioner in United States District Court in Kentucky, which were then transferred to United States District Court for the Southern District of New York, were based on similar breaches in other retrocessional insurance contracts between Delta and the same group of defendants including IRB. The plaintiff Commissioner moved in both State actions to, *inter alia,* strike the answers of several of the foreign defendant retrocessionaire companies based on their failure to post a preanswer security pursuant to New York State Insurance Law § 1213 (c) (1). In the above-referenced Federal action the issue arose in the procedural context of motions, by several of the foreign defendant retrocessionaires, to be relieved of the requirement that they post a preanswer security pursuant to Insurance Law § 1213 (c) (1) based on their status as instrumentalities of foreign States.

Insurance Law § 1213 (c) (1) (A) requires any foreign or alien insurer not authorized to do business in New York either to obtain a license to conduct insurance business here or to post a security, "in an amount to be fixed by the court sufficient to secure payment of any final judgment which may be rendered" against such insurer, before said insurer may file any pleading in any proceeding against it.

Defendant-appellant IRB was the only insurer to appear in

2. Reinsurance is the "ceding by one insurance company to another of all or a portion of its risks for a stipulated portion of the premium, in which the liability of the reinsurer is solely to the reinsured, which is the ceding company, and in which contract the ceding company retains all contact with the original insured, and handles all matters prior and subsequent to loss." (13A Appleman, Insurance Law and Practice § 7681, at 480 [rev ed 1976].) When the reinsurer in turn transfers this risk, the transaction is known as a retrocessional agreement. The transferring reinsurer is known as the retrocedent; the assuming reinsurer is known as the retrocessionaire. *(John Hancock Prop. & Cas. Ins. Co. v Universale Reins. Co.,* 147 FRD 40, 43, n 2.)

opposition to the motions in the New York State actions. IRB contended, *inter alia,* that as an instrumentality of the sovereign State of Brazil it was immune from the requirements of Insurance Law § 1213 (c) (1) pursuant to the Foreign Sovereign Immunities Act (28 USC § 1609). 28 USC § 1609 generally provides foreign States and agencies or instrumentalities of foreign States with immunity from attachment, arrest and execution except as provided in 28 USC §§ 1610 and 1611.[3] The plaintiff Commissioner maintained that IRB was not an instrumentality of the Brazilian government entitled to the protection of the FSIA. In addition the Commissioner contended that even if IRB is to be considered an instrumentality of a foreign State, the McCarran-Ferguson Act (15 USC §§ 1011, 1012 [b]), which provides that the business of insurance is subject to the laws of the States and prohibits Federal regulation thereof, preempts the FSIA with respect to Insurance Law § 1213 (c) (1). The Commissioner also contended that so-called "Service of Suit Clauses" in the retrocessional insurance contracts entered into by IRB contained waivers of the immunity IRB might claim pursuant to the FSIA.

The IAS Court acknowledged the pendency of the above-referenced Federal action as well as the identity of the issues raised with respect to Insurance Law § 1213 (c) (1). The trial court concluded that, inasmuch as the FSIA is a comprehensive statutory plan regulating a matter of legitimate national concern, the uniform Federal law interpreting its terms should control *(see, Flanagan v Prudential-Bache Sec.,* 67 NY2d 500, 506, *cert denied* 479 US 931, citing *Alvez v American Export Lines,* 46 NY2d 634, 639, *affd* 446 US 274). Thus the IAS Court determined that it was bound by Federal Magistrate Kathleen A. Roberts' determinations in *Moore v National Distillers & Chem. Corp.* (143 FRD 526, *supra),* dated August 14, 1992 and entered August 18, 1992, that the posting of a preanswer security is the equivalent of an "attachment" for the purposes of the FSIA and that the McCarran-Ferguson Act does not preempt the FSIA and that consequently, the

---

**3.** 28 USC § 1610 (d) provides that the property of a foreign State, used for commercial activity in the United States, is not immune from attachment prior to the entry of a judgment in any action brought in a court of the United States if: (1) the foreign State has explicitly waived its immunity from attachment prior to judgment and (2) the purpose of the attachment is to secure satisfaction of a judgment that has been or may ultimately be entered against the foreign State and not to obtain jurisdiction. Section 1611 has no application to this case.

FSIA prohibits the imposition of the Insurance Law § 1213 (c) (1) preanswer security requirement on foreign States and their agencies.

The IAS Court in its October 6, 1992 decision concluded that the District Court failed to make any determination concerning IRB's status under the FSIA because the plaintiff Commissioner failed to contest the issue in that action. Additionally, the IAS Court concluded that the Commissioner's failure to contest IRB's foreign agency status in the Federal action is not binding on the Commissioner in the State actions. In the order appealed, entered February 8, 1993, which determined IRB's motions to reargue and/or renew the motions disposed of in the October 6, 1992 decision, the court at IAS acknowledged that IRB brought to its attention for the first time on that motion, the fact that the Commissioner moved to reargue Magistrate Roberts' determination in the Federal action and raised the issue of IRB's status as an instrumentality of the Brazilian government. The IAS Court noted that Magistrate Roberts denied the motion to reargue "for substantially the reasons set forth in the 'Memorandum of Law in Opposition to Plaintiff's Motion to Reargue' submitted by IRB".

The IAS Court stated however, that it did not believe that either of the decisions rendered by the Federal Magistrate, which it viewed as Federal "interlocutory orders" not subject to appeal, served to collaterally estop the plaintiff from disputing IRB's status, even if the Commissioner's submissions on reargument amounted to a full and fair opportunity to litigate the matter. The IAS Court's determination was based on its conclusion that Federal law, which delineates the scope given to a Federal determination, requires that for the purposes of either collateral estoppel or res judicata the issue must be raised, litigated and actually decided by a judgment. The IAS Court acknowledged that under New York law, an order deciding a motion may provide a basis for collateral estoppel (see, Vavolizza v Krieger, 33 NY2d 351, 356). However, the IAS Court cited Interconnect Planning Corp. v Feil (774 F2d 1132, 1135-1136) and concluded that Federal law requires that the "judgment" must be final and that an interlocutory order is not entitled to conclusive effect. Consequently, in the February 8, 1993 order the court granted renewal and adhered to its prior determination.

Under New York law, collateral estoppel is based upon the general principle that a party, or one in privity with a party, should not be permitted to relitigate an issue decided against

it *(D'Arata v New York Cent. Mut. Fire Ins. Co.,* 76 NY2d 659, 664). The party seeking the benefit of collateral estoppel must prove that the identical issue was necessarily decided in the prior action and is decisive in the present action. The party to be precluded from relitigating the issue must have had a full and fair opportunity to contest the prior determination *(supra,* at 664, citing *Kaufman v Eli Lilly & Co.,* 65 NY2d 449, 455). It has been held that collateral estoppel is grounded on concepts of fairness and should not be mechanically applied *(Matter of Halyalkar v Board of Regents,* 72 NY2d 261, 268-269). Accordingly, it has been stated that "[t]he question of whether a party has had a full and fair opportunity to contest a prior determination cannot be reduced to a formula" *(Gilberg v Barbieri,* 53 NY2d 285, 292). Thus, the Court of Appeals has stated that "the question as to whether a party had a full and fair opportunity to litigate a prior determination, involves a practical inquiry into 'the realities of litigation' " *(supra,* at 292, quoting *Schwartz v Public Adm'r of County of Bronx,* 24 NY2d 65, 72).

It is readily apparent, and in fact the Commissioner and the IAS Court both acknowledge, that the issue of whether IRB must file a preanswer security pursuant to Insurance Law § 1213 (c) (1) raised in this action is identical to the issue raised in the Federal action involving the identical parties.

Review of the Magistrate's August 18, 1992 decision shows that in a footnote the Magistrate explicitly stated that the Commissioner did not contest the foreign State status of IRB. In the order dated September 4, 1992, denying the Commissioner's motion to reargue, the Magistrate stated only that the motion was denied for the reasons stated in the memorandum submitted to it by IRB. Review of the relevant portions of IRB's "Memorandum of Law in Opposition to Plaintiff's Motion to Reargue", which is present in the record before this Court, demonstrates that the Commissioner's reargument motion in Federal court was primarily based on the contention that IRB should not be viewed as an agency of the Brazilian government. While there was no extensive discussion of the matter in the Magistrate's decision on the reargument motion, it was explicitly stated that IRB's memorandum formed the basis of her denial of reargument.

It is clear from this record that the Commissioner had the opportunity to contest the foreign agency status of all of the moving defendant retrocessionaires in Federal court. Also readily apparent is the fact that despite choosing not to

contest IRB's foreign agency status on the defendant retrocessioniare's original motions to be relieved from Insurance Law § 1213 (c) (1), the Commissioner was allowed to raise and argue the issue in his motion to reargue. Consequently, we find that the plaintiff Commissioner did have a full and fair opportunity to litigate the issue of IRB's foreign State status and that a determination of that issue was made in the Federal action.

In determining not to give the Magistrate's determination collateral estoppel effect against the Commissioner in the matter at bar the court stated: "This Court does not believe that the decisions rendered by Magistrate Judge Roberts, which are interlocutory and not yet subject to appeal, serve to bar plaintiff's [Commissioner's] dispute as to IRB's status, even if plaintiff's submissions on reargument amounted to a full and fair opportunity to litigate the matter."

The determination of whether a particular Federal Magistrate's determination or United States District Court's interlocutory order is final and/or subject to appeal is not an uncomplicated exercise. Simply concluding, as the IAS Court did, that an order is "interlocutory" does not necessarily preclude a finding that the order is final and appealable. Defendant-appellant IRB correctly points out that the Magistrate's decision is subject to review by the District Court Judge presiding over the matter pursuant to 28 USC § 636 (b) (1) (A) and Federal Rules of Civil Procedure, rule 72 (a). However, that fact alone does not necessarily compel a finding that it is final.

28 USC § 1291 states in pertinent part that the "courts of appeals * * * shall have jurisdiction of appeals from all final decisions of the district courts of the United States". 28 USC § 1292 (a) delineates which interlocutory orders of United States District Courts are appealable. Section 1292 (a) (1) states in pertinent part: "Except as provided in subsections (c) and (d)[4] of this section, the courts of appeals shall have jurisdiction of appeals from: (1) Interlocutory orders of the district courts of the United States * * * or of the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions".

---

4. Subdivision (c) describes matters within the "exclusive jurisdiction" of the United States Court of Appeals for the Federal Circuit and subdivision (d) pertains to appeals from the Court of International Trade to the United States Court of Appeals for the Federal Circuit.

Subdivision (b) of section 1292 provides that a District Court Judge may state in writing that he believes an order, which is not otherwise appealable, involves a controlling question of law as to which an immediate appeal may materially advance the ultimate termination of the litigation. In that case the Circuit Court of Appeals having jurisdiction over the particular District Court and Judge may in its discretion permit the appeal.

In *Gillespie v United States Steel Corp.* (379 US 148, 152), the Supreme Court stated: "Under [28 USC] § 1291 an appeal may be taken from any 'final' order of a district court. But as this Court often has pointed out, a decision 'final' within the meaning of § 1291 does not necessarily mean the last order possible to be made in a case. *Cohen* v. *Beneficial Industrial Loan Corp.*, 337 U. S. 541, 545. And our cases long have recognized that whether a ruling is 'final' within the meaning of § 1291 is frequently so close a question that decision of that issue either way can be supported with equally forceful arguments, and that it is impossible to devise a formula to resolve all marginal cases coming within what might well be called the 'twilight zone' of finality. Because of this difficulty this Court has held that the requirement of finality is to be given a 'practical rather than a technical construction.' *Cohen* v. *Beneficial Industrial Loan Corp., supra,* 337 U. S., at 546. See also *Brown Shoe Co.* v. *United States,* 370 U. S. 294, 306; *Bronson* v. *Railroad Co.,* 2 Black 524, 531; *Forgay* v. *Conrad,* 6 How. 201, 203." *(But see, Coopers & Lybrand v Livesay,* 437 US 463.)

In *Cohen v Beneficial Indus. Loan Corp.* (337 US 541, 545-546, *supra),* the Court found that an order, which denied a corporate defendant's motion to require the plaintiff and an intervenor to give a security for reasonable expenses for which the corporate defendant might become subject, was final and appealable. The Court stated that the decision appeared "to fall in that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated" (337 US, *supra,* at 546; *see also, Coopers & Lybrand v Livesay, supra; Firestone Tire & Rubber Co. v Risjord,* 449 US 368).

The Magistrate's determination in this case, like the District Court Judge's order in *Cohen v Beneficial Indus. Loan Corp. (supra),* involves the posting of a security and falls into

the class of cases spoken of by the Supreme Court in *Cohen (supra)*, which finally determine claims of right separable from and collateral to the issues which are dispositive of the action *(see, Caribbean Trading & Fid. Corp. v Nigerian Natl. Petroleum Corp.,* 948 F2d 111, *cert denied* — US —, 112 S Ct 1941). Consequently, if the analysis were to end here, we could find the Magistrate's order to be "final" based on a "practical construction" of the statutes and the collateral nature of the order alone. However, the general rule under Federal law appears to be that, for the purposes of appeal to the Circuit Courts, a Magistrate's order is not a final order of the District Court within the meaning of section 1291 *(see, Siers v Morrash,* 700 F2d 113, 115, citing *Horton v State St. Bank & Trust Co.,* 590 F2d 403; *Matter of Mackin,* 668 F2d 122; *Glover v Alabama Bd. of Corrections,* 651 F2d 1014, *reh denied* 660 F2d 120; *Metric & Multistandard Components Corp. v Metric's Inc.,* 600 F2d 1237; *United States v First Natl. Bank,* 576 F2d 852). It has been stated that "[t]o be a 'final' order of the district court within the meaning of section 1291, the magistrate's decision must have been reviewed by the district court, which retains the ultimate decision-making power" *(Siers v Morrash, supra,* at 114-115).

However, a Magistrate's determination may be considered "final" when left unreviewed by a District Court Judge. The Federal Magistrates Act provides in part that, except for certain enumerated dispositive motions, for injunctive relief, for judgment on the pleadings and to dismiss or quash an indictment, etc., "a judge may designate a magistrate to hear and determine any pretrial matter pending before the court" (28 USC § 636 [b] [1] [A]). Pursuant to 28 USC § 636 (b) and Federal Rules of Civil Procedure, rule 72 (a), objections to the Magistrate's order on a matter sent to the Magistrate to hear and determine, must be served and filed within 10 days. Upon the filing of objections within the prescribed time, the District Court Judge can set aside the Magistrate's ruling if it is found to be "clearly erroneous or contrary to law" (28 USC § 636 [b] [1] [A]; *Pagano v Frank,* 983 F2d 343). "If, however, the aggrieved party sits idly by and fails to object within the prescribed period, he [or she] 'may not thereafter assign as error a defect in the magistrate's order' " *(Pagano v Frank, supra,* at 346). It has been held that:

"[t]he legislative history pertaining to this section reveals Congress' express intention that a magistrate's determination of such pretrial matters 'shall be "final" subject only to the

ultimate right of review by a judge of the [district] court.' H.R.Rep. No. 94-1609, *reprinted in* 1976 U.S.Code Cong. & Ad.News 6162, 6170.

"Congress has thus made clear that a magistrate's decision of a pretrial matter * * * is to be considered 'final' absent review by a district judge" *(Siers v Morrash,* 700 F2d, *supra,* at 115-116).

This Court has held that interlocutory orders of the United States District Court, which are nonappealable *(see,* 28 USC § 1291), cannot provide a basis for collateral estoppel *(Zangiacomi v Hood,* 193 AD2d 188, 195, citing *Matter of McGrath v Gold,* 36 NY2d 406, 411). It was concluded in *Zangiacomi (supra)* that since the plaintiff could not obtain review of the adverse District Court determination he should not be bound by it. (Restatement [Second] of Judgments § 28 [1].) However, the above demonstrates that Magistrate's decisions are subject to the review of the District Court Judge presiding over the matter *(Siers v Morrash, supra).*

There is no evidence in the record before this Court that the Commissioner objected to either the Magistrate's initial order or the order on the reargument motion within the prescribed time. Therefore, based on the collateral nature of this nondispositive issue, practical construction of the statutes in view of the "realities" of this litigation *(Gillespie v United States Steel Corp., supra,* at 152; *Schwartz v Public Adm'r of County of Bronx,* 24 NY2d, *supra,* at 72) and on the Commissioner's failure to seek review of those orders by the District Court,[5] we consider the Magistrate's decision entered August 18, 1992 and order dated September 4, 1992 to be "final" for the purposes of collateral estoppel. We hold, therefore that, under the particular circumstances of this case, it was error for the court at IAS to refuse to give complete preclusive effect to determinations made by Federal Magistrate Roberts with respect to IRB's obligation to post a preanswer security pursuant to Insurance Law § 1213 (c) (1).

■ In any event our own review of the matter yields the same result as that reached in the Federal action. While this Court is not bound by the Magistrate's statement of the law, we find the Federal law cited in the Magistrate's opinion

---

5. We recognize that pursuant to 28 USC § 636 (b) (1) (A) a District Court Judge may reconsider any pretrial matter determined by a Magistrate pursuant to clause (A) "where it has been shown that the magistrate's order is clearly erroneous or contrary to law".

concerning preemption to be controlling *(Alvez v American Export Lines, supra),* and we agree with the analysis and application of same. The Magistrate correctly concluded, that while the McCarran-Ferguson Act (15 USC § 1011 *et seq.)* provides the States with the power and privilege to regulate the business of insurance, the Supreme Court of the United States has held that the preemptive effect of the McCarran-Ferguson Act only " 'exempts the insurance industry from Commerce Clause restrictions' " (143 FRD, *supra,* at 533, quoting *Metropolitan Life Ins. Co. v Ward,* 470 US 869, 880). It has also been held that the McCarran-Ferguson Act does not preempt the application of the Constitution and other Federal laws *(supra,* at 533-534, citing *State Bd. of Ins. v Todd Ship-yards,* 370 US 451). Moreover, it is settled that, "[i]n enacting the FSIA, 'Congress expressly exercised its power to regulate foreign commerce, along with other specified Art. I powers' " *(supra,* at 534, quoting *Verlinden B. V. v Central Bank,* 461 US 480, 496). Therefore, the Magistrate properly concluded that "[i]n view of the paramount importance of the U.S. foreign policy concerns embodied in the FSIA * * * the preemptive effect of the McCarran-Ferguson Act does not extend to the FSIA" *(supra,* at 534).

Additionally, upon review of the evidence submitted by IRB concerning its foreign agency status, we find that there is sufficient evidence of ownership and control by the Brazilian government to conclude that IRB is entitled to the protection afforded by the FSIA. While the 50% ownership of IRB by the Brazilian government is not a clear majority interest, the level of control over the company retained by the Brazilian government supports this conclusion. It is not disputed that IRB was created by statute and given certain regulatory powers over other insurance companies operating in Brazil (Brazilian Decree Law No. 73, Nov. 21, 1966, arts 41-71);[6] that the Brazilian government has the authority to appoint IRB's president, directors and officers;[7] and that the Brazilian Minister of Finance supervises IRB's operations.

---

**6.** Article 42 of Brazilian Decree Law No. 73 of November 21, 1966, provides that the "purpose of IRB is to regulate co-insurance, reinsurance and retrocession as well as to promote the development of insurance operations in accordance with the directives of the CNSP (Conselho Nacional de Seguros Privados: The National Private Insurance Counsel)."

**7.** For example, article 48 of Decree Law No. 73 provides that the president of IRB shall be appointed by the President of the Republic in the presence of the Minister for Industry and Commerce.

We have reviewed all of the other arguments advanced by the Commissioner with respect to issue of IRB's immunity from the preanswer security requirement of Insurance Law § 1213 (c) (1) and find them to be without merit.

■ ■ Inasmuch as no appeal lies from a "decision" of the Supreme Court (CPLR 5512; *Haftel v Appleton,* 21 AD2d 651) the appeal from the decision of the Supreme Court, New York County (Beatrice Shainswit, J.), dated October 6, 1992, should be dismissed. Moreover, the appeal from the order of the same court and Justice dated February 4, 1993 and entered February 17, 1993, which, *inter alia,* granted the plaintiff's motion to strike defendant IRB's answer, should be dismissed as superceded by the appeal from the order of the same court and Justice entered February 8, 1993, in which the court granted renewal of the motions decided in the order dated February 4, 1993 and adhered to its original decision *(Belsid Holding Corp. v Dahm,* 12 AD2d 499).

Accordingly, the appeal from the decision of the Supreme Court, New York County (Beatrice Shainswit, J.), dated October 6, 1992, is dismissed, the appeal from the order of the same court and Justice dated February 4, 1993 and entered February 17, 1993, which, *inter alia,* granted the plaintiff's motion to strike defendant IRB's answer, is dismissed as superceded by the appeal from the order of the same court and Justice entered February 8, 1993 and said order entered February 8, 1993, which granted renewal, is unanimously modified, on the law and the facts, to deny the plaintiff's motion to strike the defendant's answer on the ground that pursuant to 28 USC § 1609 defendant IRB is immune from the preanswer security requirement of Insurance Law § 1213 (c) (1), with costs.

SULLIVAN, J. P., CARRO, ROSENBERGER and ASCH, JJ., concur.

Decision, Supreme Court, New York County, dated October 6, 1992, is dismissed, the appeal from the order of the same court and Justice dated February 4, 1993 and entered February 17, 1993, which, *inter alia,* granted the plaintiff's motion to strike defendant IRB's answer, is dismissed as superceded by the appeal from the order of the same court and Justice entered February 8, 1993 and said order entered February 8,

1993, which granted renewal, is unanimously modified, on the law and the facts, to deny the plaintiff's motion to strike the defendant's answer on the ground that pursuant to 28 USC § 1609 defendant IRB is immune from the preanswer security requirement of Insurance Law § 1213 (c) (1), with costs.